UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRET MACDONALD, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK N.A,<br><br>    Defendant. | Case No. 14-cv-04970-HSG (MEJ)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 75 |

## INTRODUCTION

The presiding judge in this matter, the Honorable Haywood S. Gilliam, Jr., referred all discovery matters to the undersigned. Dkt. No. 73. Pending before the Court is a joint discovery letter filed by Plaintiffs Bret MacDonald and Amalia MacDonald[1] (collectively, "Plaintiffs") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") regarding Wells Fargo's requests to depose Plaintiffs and third parties after the discovery deadline. Letter, Dkt. No. 75. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Plaintiffs own property located at 5366 South Dublin Ranch Drive, Dublin, California 94568 (the "Property"), which serves as their principal residence. Compl. ¶ 1, Dkt. No. 1. On or around December 21, 2005, Plaintiffs executed a Deed of Trust and Promissory Note in favor of Wells Fargo. *Id.* ¶ 9. In or around January 2013, Plaintiffs applied for a loan modification. *Id.* ¶ 11. On or around June 25, 2013, Wells Fargo sent Plaintiffs a letter stating their application had

---

[1] Because Plaintiffs share a last name, for ease of reference, the Court refers to them individually as Bret and Amalia.

been taken out of the loan modification process because Plaintiffs had filed for bankruptcy in the Northern District of California in January 2013. *Id.* ¶ 12. Plaintiffs allege they had not filed for bankruptcy and contacted their designated Wells Fargo representative to inform Wells Fargo of its mistake. *Id.* ¶ 13. The representative indicated Plaintiffs would have to submit a new application due to the fact that their previous application had been closed, but the representative did not address the bankruptcy issue. *Id.* Plaintiffs resubmitted a loan modification application in or around July 2013. *Id.* ¶ 14. Wells Fargo informed Plaintiffs their application was complete on October 28, 2013 and would inform Plaintiffs of its decision by November 27, 2013. *Id.* ¶ 15.

Plaintiffs did not receive a response by the aforementioned deadline, and their numerous attempts to contact their designated representative to determine the status of their application were unsuccessful. *Id.* ¶ 16. On January 23, 2014, Plaintiffs called Wells Fargo's general number; however, the person to whom they spoke stated the January 2013 bankruptcy prevented her from speaking with Plaintiffs. *Id.* ¶ 17. Plaintiffs maintain they have never received a determination of or status update for their loan modification application that was completed in October 2013.

Plaintiffs subsequently filed this action. They assert three claims against Wells Fargo: (1) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691; (2) violation of California Civil Code § 2923.7; and (3) negligence. *Id.* ¶¶ 20-37.

Wells Fargo deposed Bret on October 25 and 28, 2016, and deposed Amalia on October 28 and 28, 2016. Letter at 1. During their depositions, Plaintiffs revealed they had retained the Ayayo Law Firm[2] ("Ayayo") from January 2013 to January 2014, "to delay the scheduled foreclosure sale of the real property that is the subject of their lawsuit."[3] *Id.* at 1.

In light of the October 28, 2016 deadline for fact discovery, Wells Fargo asked Plaintiffs to stipulate to extend the discovery deadline to allow Wells Fargo to depose Ayayo, request documents from Ayayo, and continue Plaintiffs' depositions to question them about Ayayo's activities. *Id.*; *see* Scheduling Order, Dkt. No. 57. On November 17, 2016, Plaintiffs agreed to

---

[2] Wells Fargo refers to this entity as "Ayayo Law Offices," whereas Plaintiffs call it the "Ayayo Law Firm." *Compare* Letter at 1 *with id.* at 3.

[3] Plaintiffs' Complaint sets forth no facts regarding the foreclosure sale. *See* Compl.

1  stipulate to discovery from Ayayo, but refused to stipulate to continue Plaintiffs' depositions.
2  Letter at 2-3. On January 6, 2017, Wells Fargo again asked Plaintiffs to stipulate to continue both
3  depositions. *Id.* Plaintiffs declined to so stipulate. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Discovery need not be admissible in evidence to be discoverable. Id. However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." This "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see* Fed. R. Civ. P. advisory notes (1983 amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the Rule 16(b) inquiry is upon the moving party's reasons for seeking modification . . . if that party was not

1  diligent, the inquiry should end.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d
2  716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015)
3  (quoting *Johnson*, 975 F.2d at 609) (brackets omitted).

## DISCUSSION

Discovery closed on October 28, 2016, yet Wells Fargo seeks to request documents from and depose Ayayo, and to depose third party Michael L. Foster. Letter at 2. Wells Fargo suspects Ayayo may have been involved in the creation of a fraudulent quitclaim deed that Wells Fargo received in January 2013 (the "Foster Quitclaim"), which "appeared to show transfer of interest in the . . . [P]roperty from Bret MacDonald to a Michael L. Foster[,]" who "was a debtor in a pending bankruptcy proceeding initiated in January 2013." *Id.* at 1. Wells Fargo argues this discovery is necessary to defend against Plaintiffs' negligence claim (*id.*), which alleges Wells Fargo "negligently removed Plaintiffs' loan modification application from review, based on its mistaken and negligent belief that Plaintiffs had filed a bankruptcy" (Compl. ¶ 34). *See* Letter at 1 ("The late disclosure of the Ayayo Law Offices' relationship with Plaintiffs raised issues with respect to the origin of the Foster Quitclaim which was the impetus for Wells Fargo believing there was an active bankruptcy related to the Property in 2013."). Wells Fargo contends discovery is necessary to determine "whether Plaintiffs directly, or through an agent, created the circumstances in which Wells Fargo was led to believe that the subject loan came under the automatic stay of the Foster Bankruptcy." *Id.* at 2. The continuance of Plaintiffs' deposition is also necessary "to question them further about the Ayayo Law Offices and Michael L. Foster." *Id.*

The Court cannot find Wells Fargo has been diligent in seeking the requested discovery. Wells Fargo may have assiduously sought a stipulation to the additional discovery in November 2016. But it does not explain why it failed to notice the depositions of Ayaya or Foster at that point and instead waited until January 2017—more than a month after its initial request and more than two months after it first realized it needed the discovery—to again ask Plaintiffs to stipulate to the depositions. Moreover, even if Plaintiffs' disclosure of Ayayo was "untimely" as Wells Fargo claims, there are a number of actions Wells Fargo could have taken prior to this point: as early as October or November, it could have requested the presiding judge extend the discovery

4

deadline in light of the revelation of Ayayo's involvement, or it could have filed a discovery letter. It did neither.

That Wells Fargo was "proceed[ing] with its defense of the litigation, including filing its Motion for Summary Judgment . . . , and preparing for and conducting expert discovery" (Letter at 2) is no excuse. First, Wells Fargo filed that motion on December 22, 2017—43 days before it first notified the Court of this dispute. *See* Dkt. No. 63 (Mot. for Summ. J.); Dkt. No. 72.[4] Second, although Plaintiffs declined to again stipulate to the depositions on January 6, 2017, the parties waited until February 3, 2017—nearly a month—before filing this initial letter. *See* Dkt. No. 72. Wells Fargo does not demonstrate good cause for these delays.

Nonetheless, because the requested discovery may be relevant to Wells Fargo's defense against Plaintiffs' negligence claim, the Court will permit Wells Fargo to depose Ayayo and Foster. Wells Fargo shall pay Plaintiffs' costs in attending the depositions. Plaintiffs shall submit a reasonable bill of costs to Wells Fargo; the parties shall meet and confer to reach agreement upon those costs.

As Plaintiffs have sat for deposition for more than seven hours, the Court denies Wells Fargo's request to further depose Plaintiffs. However, Plaintiffs previously agreed to produce documents regarding Plaintiffs' retention of Ayayo, and Wells Fargo indicates Plaintiffs did not do so. Letter at 1. As such, the Court ORDERS Plaintiffs to provide Wells Fargo with those documents.

## CONCLUSION

Based on the foregoing analysis, the Court **ORDERS** the following:

1. Plaintiffs shall produce to Wells Fargo documents regarding Plaintiffs' retention of Ayayo no later than **March 10, 2017**.
2. Wells Fargo may depose Ayayo and Foster. Wells Fargo shall pay Plaintiffs' costs in attending the deposition.
3. Wells Fargo may not further depose Plaintiffs at this time. If, after reviewing the

---

[4] The undersigned denied this letter without prejudice to allow the parties to meet and confer in person in accordance with the Court's Discovery Standing Order. Dkt. No. 74.

documents produced in accordance with this Order, Wells Fargo still seeks to depose Plaintiffs, the parties may file another joint discovery letter in accordance with the undersigned's Discovery Standing Order. Wells Fargo must articulate with specificity why good cause exists for the further depositions.

**IT IS SO ORDERED.**

Dated: February 24, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge